NO. 07-09-0127-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL E

NOVEMBER 19, 2009
_____

UNIVERSITY MEDICAL CENTER, APPELLANT

V.

MARY B. HARRIS AND GREGORY E. HARRIS, APPELLEES
_____

FROM THE 99TH DISTRICT COURT OF LUBBOCK COUNTY;

NO. 2008-544,860; HONORABLE WILLIAM C. SOWDER, JUDGE
_____

Before QUINN, C.J., and CAMPBELL, J., and BOYD, S.J.[1]


**OPINION**


Appellant University Medical Center brings an interlocutory appeal from the trial court's denial of its plea to the jurisdiction based on governmental immunity.[2] Finding appellees Mary Beth Harris and her husband Gregory E. Harris presented facts sufficient to allege a use of tangible personal property by UMC and so bring their claim against UMC

_____

[1] John T. Boyd, Chief Justice (Ret.), Seventh Court of Appeals, sitting by assignment.

[2] An interlocutory appeal is available of an order that grants or denies a plea to the jurisdiction by a governmental unit. Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(8) (Vernon 2008) and § 101.001(3)(D) (Vernon 2005).

within the limited waiver of governmental immunity provided by Texas Civil Practice and Remedies Code §101.021(2), we will affirm.

## Background

On September 10, 2007, Mary Beth Harris underwent a hysterectomy in a UMC operating room. Duncan Burkholder, M.D. performed the procedure, assisted by another surgeon, a circulating nurse and scrub technician. The latter two were employees of UMC. UMC provided surgical instruments and supplies including sponges and surgical towels for the procedure.

During Harris's surgery, Dr. Burkholder requested a surgical towel.[3] The scrub technician responded by moistening a towel with saline solution and handing it to Dr. Burkholder. Dr. Burkholder then packed the patient's intestines with the towel. For this function, he sometimes preferred a towel over a laparotomy sponge.

After her discharge from UMC, Harris began experiencing pain and swelling. When her symptoms persisted during two later trips to the emergency room, Harris was admitted to UMC and on October 10 underwent a surgical procedure. In the course of this procedure, a surgical towel was removed from her abdominal cavity.

Harris and her husband subsequently filed the underlying suit. UMC filed a plea to the jurisdiction asserting it was the assumed name of Lubbock County Hospital District.

---

[3] The cotton towel, sometimes referred to in the record as a "blue towel," measured some twelve-by-eighteen inches and was of the same type used to "drape" the surgical area of the patient.

It claimed governmental immunity from suit and alleged the Harrises' claim did not show her injuries were caused by its use of tangible personal property so as to come within the limited statutory waiver of governmental immunity provided by Civil Practice and Remedies Code section 101.021(2). Tex. Civ. Prac. & Rem. Code Ann. § 101.021(2) (Vernon 2005). The Harrises filed a response accompanied by the deposition of Dr. Burkholder. The trial court denied UMC's plea to the jurisdiction after a hearing. This interlocutory appeal followed.

Analysis

Governmental immunity protects political subdivisions of the State from lawsuits and liability for money damages. *See Mission Consol. Indep. Sch. Dist. v. Garcia,* 253 S.W.3d 653, 655 (Tex. 2008) (*citing Reata Constr. Corp. v. City of Dallas,* 197 S.W.3d 371, 374 (Tex. 2006)); *Tex. A & M Univ. v. Bishop,* 156 S.W.3d 580, 583 (Tex. 2005) (immunity shields the State from liability for negligence of its employees). Governmental immunity from suit deprives the trial court of subject-matter jurisdiction over a plaintiff's claims against a governmental entity. *Harris County v. Sykes,* 136 S.W.3d 635, 638 (Tex. 2004).

The Texas Tort Claims Act provides a limited waiver of immunity. Tex. Civ. Prac. & Rem. Code Ann. §§ 101.001-.109 (Vernon 2005 & Supp. 2008). In part pertinent to the present case, section 101.021(2) of the Act provides a governmental unit is liable for personal injury caused by a use of tangible personal property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law. Tex. Civ. Prac. & Rem. Code Ann. § 101.021(2) (Vernon 2005). "Use" means "to put or bring [the

3

property] into action or service; to employ for or apply to a given purpose." *San Antonio State Hosp. v. Cowan,* 128 S.W.3d 244, 246 (Tex. 2004) (internal quotations and footnote omitted); *Mount Pleasant Indep. Sch. Dist. v. Estate of Lindburg,* 766 S.W.2d 208, 211 (Tex. 1989) (*quoting Beggs v. Texas Dept. of Mental Health & Mental Retardation,* 496 S.W.2d 252, 254 (Tex.Civ.App.–San Antonio 1973, writ ref'd)).

A plea to the jurisdiction is a dilatory plea that seeks dismissal of a case for lack of subject-matter jurisdiction. *Sykes,* 136 S.W.3d at 638. We review *de novo* the ruling of a trial court on a plea to the jurisdiction as the existence of jurisdiction *vel non* is a question of law. *Houston Mun. Employees Pension Sys. v. Ferrell,* 248 S.W.3d 151, 156 (Tex. 2007). When the pleadings are challenged, we consider the allegations in favor of the plaintiff to determine if the plaintiff alleged facts affirmatively demonstrating the jurisdiction of the trial court to hear the case. *Tex. Dep't of Parks & Wildlife v. Miranda,* 133 S.W.3d 217, 226 (Tex. 2004). To the extent relevant to the issue of jurisdiction, we consider any evidence received by the trial court. *Bland Indep. Sch. Dist. v. Blue,* 34 S.W.3d 547, 555 (Tex. 2000); *Texas Tech Univ. v Ward,* 280 S.W.3d 345, 348 (Tex.App.–Amarillo 2008, pet. denied). Unless a jurisdictional fact is challenged and conclusively negated, we must accept it as true for determining subject-matter jurisdiction. *See City of El Paso v. Heinrich,* 284 S.W.3d 366, 378 (Tex. 2009) (court reviewing plea to jurisdiction takes as true all evidence favorable to non-movant, indulging every reasonable inference and resolving any doubts in its favor).

In their live petition, the Harrises allege UMC "acting by and through its . . . employees" failed to exercise ordinary care in its dealing with Mary B. Harris in the following particulars:

a.    Failure to inventory all towels used during the procedure;

b.    Failure to properly count all towels at the end of the surgery;

c.    Failure to double check all counts for accuracy; and

d.    Failure to confirm all towels were removed from the surgical site.

We express no opinion on the sufficiency of the allegations of the Harrises' petition alone to establish a waiver of governmental immunity because, as the parties agree, our jurisdictional analysis must include consideration of the evidence the Harrises offered in opposition to UMC's plea to the jurisdiction. *See Wise Reg'l Health Sys. v. Brittain,* 268 S.W.3d 799, 806 (Tex.App.–Fort Worth 2008, no pet.) (finding it unnecessary to determine whether pleadings were insufficient to establish waiver of immunity because evidence added "necessary factual specifics"). As noted, that evidence consisted of the deposition testimony of the surgeon, Dr. Burkholder.

As Dr. Burkholder described the surgical procedure with regard to instruments and other items used during the surgery, the role of the scrub technician included handing items to the surgeon and removing them from the surgical field. His testimony also revealed that, in addition to their other duties, the circulating nurse and scrub technician maintained a count of items brought into and removed from the surgical field, keeping up with the count by entries on a dry erase board on the operating room wall. As the surgical

5

wound was closed, both the circulating nurse and the surgical technician again conducted a physical count to verify the presence of the items brought into the surgical field.

To support its argument the evidence reflects no use of the towel by UMC, it focuses on the count procedure. By its view, any failure of its employees to properly count items used in surgery was a nonuse of tangible personal property or a misuse of information. While as a general proposition these actions, nonuse of tangible personal property and misuse of information, do not constitute a use for purposes of section 101.021(2),[4] we do not agree that UMC's actions were so limited.

UMC also directs us to *Bishop*, 156 S.W.3d 580, and *Cowan*,128 S.W.3d 244, contending they control our disposition of this case. In *Cowan*, a psychotic patient with a suicidal ideation was involuntarily committed to a state hospital. 128 S.W.3d at 245. The hospital took custody of Cowan and his personal effects but allowed him to keep his walker and suspenders. *Id.* Two days later, Cowan employed a piece of pipe from his walker and his suspenders to commit suicide. *Id.* In a suit by Cowan's wife against the hospital, the trial court denied the hospital's plea to the jurisdiction. On interlocutory appeal, a divided court of appeals affirmed. *Id.* at 24.

On review, the Texas Supreme Court disagreed with the trial court and court of appeals, reversing and dismissing the case. 128 S.W.3d at 247. The court framed the issue for disposition as "whether merely providing someone with personal property that is

---

[4] *See, e.g., Kerrville State Hosp. v. Clark,* 923 S.W.2d 582, 584-86 (Tex. 1996) (non-use); *University of Tex. Med. Branch at Galveston v. York,* 871 S.W.2d 175, 179 (Tex. 1994) (information).

not itself inherently unsafe is a 'use' within the meaning of the Act." *Id.* at 245. The court referred to its previous holding that waiver occurs under section 101.021(2) only when the governmental unit is itself the user of personal property. *Id.* at 245-46. Thus, noted the court, the hospital's immunity was waived only for its own use of Cowan's walker and suspenders. *Id.* at 246. The court explained that "[a] governmental unit does not 'use' personal property merely by allowing someone else to use [the property] and nothing more. If all 'use' meant were 'to make available', the statutory restriction would have very little force." *Id.* at 246. Providing Cowan his walker and suspenders without more was not a use of these items for the purpose of waiver of immunity. *Id.*

The court found the use Cowan's wife alleged, allowing Cowan to have his walker and suspenders, did not reach the level of use present in *Overton Memorial Hospital v. McGuire*, 518 S.W.2d 528 (Tex. 1975) (per curiam). That is, in *Overton* the government-owned hospital did not merely allow use of its personal property, a bed without rails, by a patient. Rather, it did more. It placed the patient in the bed as part of his post-operative treatment. *Cowan,* 128 S.W.3d at 246-47 (*citing Overton,* 518 S.W.2d at 528).

In *Bishop,* two university faculty advisors provided the school's drama club logistical support and served as the club's liaisons to the university. 156 S.W.3d at 581-82. The club hired two independent contractors to direct a production and assist with props and choreography. *Id.* at 582. The contractors decided a real knife was necessary for a stabbing scene. *Id.* In a performance, the actor wielding the knife missed the protective "stab pad" worn by a co-actor, stabbing and injuring the co-actor. *Id.* The injured actor

7

sued the university under a *respondeat superior* theory for conduct of the faculty advisors and the contractors. *Id.* In finding no waiver of the university's immunity from suit, the court held the faculty advisors, who were university employees, did not take actions meeting the definition of use of the knife.[5] *Id.* at 583.

We find the facts of the present case significantly different from those in *Cowan* and *Bishop*. In *Bishop* the university employees did not provide the knife. Indeed, they were not even aware a real knife was to be used in the production. *Bishop*, 156 S.W.3d at 582. The university's employees thus hardly could be said to have engaged in a use of the instrument of injury. And in *Cowan* the hospital did not put or place Cowan's walker and suspenders into service or employ them for a given purpose. Rather, it merely allowed Cowan to maintain possession of these items. *Cowan,* 128 S.W.3d at 245. *Cowan* also would teach that UMC did not use the towel, in the Texas Tort Claims Act sense, if its role was limited simply to "allowing someone else to use it and nothing more." *Id*. at 246.

Here UMC provided the towel for surgery, along with the surgical instruments and other supplies such as sponges, a factor which alone distinguishes this case from *Bishop*. And, as distinguished from the hospital's actions in *Cowan*, UMC did not merely make the towel available, or merely allow the surgeon to use it. The circulating nurse and surgical technician assisted in the surgery. According to Dr. Burkholder's deposition testimony, their role involved both the physical handling of surgical instruments and other items during

---

[5] The court went on to find the actions of the independent contractors could not constitute a use under section 101.021(2) that would waive the university's immunity. 156 S.W.3d at 585.

surgery,[6] and a shared responsibility[7] with the surgeon of insuring that objects placed into the patient during surgery were removed. Accepting those jurisdictional facts as true for our present purpose, *Heinrich,* 284 S.W.3d at 378, we find the actions of UMC's operating room employees constituted a use of the towel in their surgical treatment of Harris. Through its employees UMC employed the towel for a given purpose, the performance of a surgical procedure on its patient.

Because we find the facts shown by the jurisdictional evidence sufficient to demonstrate the trial court's jurisdiction over the Harrises' claims against UMC, we overrule UMC's issue and affirm the order of the trial court denying its plea to the jurisdiction. The cause is remanded to the trial court for further proceedings.


James T. Campbell
Justice

---

[6] Dr. Burkholder also testified, for instance, that during the hysterectomy the excised uterus itself passed through the surgical technician's hands in its path from the surgical field ultimately to the laboratory.

[7] The phrase "shared responsibility" was Dr. Burkholder's.