

# NUMBER 13-20-00339-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

| | |
|---|---|
| **TEXAS DEPARTMENT OF TRANSPORTATION,** | **Appellant,** |
| **v.** | |
| **DANIEL K. CHRIST AND NICOLE D. SALINAS,** | **Appellees.** |

### On appeal from the 129th District Court
### of Harris County, Texas.

# MEMORANDUM OPINION

**Before Justices Benavides, Hinojosa, and Silva**
**Memorandum Opinion by Justice Silva**

Appellant Texas Department of Transportation (TxDOT) appeals the trial court's

denial of its plea to the jurisdiction and no-evidence motion for summary judgment of

appellees, Daniel K. Christ and Nicole D. Salinas's, tort claims. By five issues, which we

treat as one, TxDOT alleges the trial court erred by denying its motions because appellees' claims are barred by sovereign immunity and do not fall within the limited waiver of immunity. We reverse and render.

## I.    BACKGROUND

On November 5, 2016, Kimberly Dillard was traveling east bound on West Bay Area Boulevard in Houston.[1] At the time, TxDOT and its contractors were performing construction on West Bay Area Boulevard. The road was not in its normal configuration due to the ongoing construction—lanes had been shifted or closed off. The traffic was divided by the "yellow striping and buttons" that Williams Brothers Construction Company (Williams Brothers) utilized instead of the originally planned low-profile concrete barriers. Dillard stated she intended to take a left turn from West Bay Area Boulevard onto the access road of Interstate 45. Although Dillard was driving under the speed limit, she did not notice any signs warning of an upcoming lane shift or signs designating lanes. Dillard mistakenly believed she was in the correct lane to turn left but was actually in the lane designated for west-bound traffic. Dillard and appellees, who were on a motorcycle, collided head on. Both appellees sustained incapacitating injuries and were taken to the hospital.

Appellees filed a suit against multiple parties, including TxDOT. After extensive discovery, TxDOT filed a plea to the jurisdiction asserting sovereign immunity and a no-evidence motion for summary judgment. TxDOT's plea to the jurisdiction challenged the

---

[1] This case is before this Court on transfer from the Fourteenth Court of Appeals in Houston pursuant to a docket equalization order issued by the Supreme Court of Texas. *See* TEX. GOV'T CODE ANN. § 73.001.

jurisdictional facts which would give rise to a waiver of sovereign immunity. TxDOT's no-evidence motion for summary judgment alleged that "[p]laintiffs have not identified, alleged, or evidenced any non-discretionary maintenance defect under TxDOT's control that caused any actionable damages . . . ."[2] In their third amended petition, appellees alleged TxDOT was negligent by: (1) failing to create and implement a traffic control plan that was safe for the driving public; (2) failing to warn the public of a deep left turn; (3) failing to reduce the speed of the area to a safer speed; and (4) allowing the roadway to open up before it was safe to do so. Appellees submitted a response with twenty-two exhibits, including nine depositions.[3]

The undisputed facts indicate that when TxDOT begins a road construction project, an engineer designs a traffic control plan to manage the flow of traffic during construction. A traffic control plan depicts the layout of various traffic control mechanisms including pavement markings, signs, lane widths, and other information. Although some minor changes to a traffic control plan do not require written approval, most changes would require written approval of an engineer. Williams Brothers was one of TxDOT's contractors working on the West Bay Area Boulevard construction. Williams Brothers was required to follow the traffic control plan during the construction project.

TxDOT's traffic control plan required a low-profile concrete barrier between the east-bound and west-bound lanes on West Bay Area Boulevard. Williams Brothers was

---

[2] Because a plea to the jurisdiction attacking jurisdictional facts and motion for no-evidence summary judgment require the same analysis and have the same result, we focus our analysis on TxDOT's plea to the jurisdiction. *See Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 225–28 (Tex. 2004).

[3] Although exhibits were admitted and referred to in each deposition, appellants did not include those exhibits with their response to TxDOT's plea to the jurisdiction and no-evidence motion for summary judgment.

3

responsible for installing the low-profile concrete barrier. However, Leonel Carrizales, a surveyor working for Williams Brothers, discovered there was not enough space to install the low-profile concrete barrier, which required a four-foot space in the road, including the required buffer space on either side. On June 23, 2016, Williams Brothers "red-lined" the traffic control plan, removing the low-profile concrete barrier installation requirement and substituting the installation of "four-inch-wide, yellow, solid, removable striping.[4]" Williams Brothers emailed the modified plan to TxDOT for approval. Williams Brothers did not receive written approval to alter the traffic control plan as required by the contract. However, Michael Honeycutt, Williams Brothers' chief surveyor, stated in a deposition that Lloyd Pierce, a consultant working for Volkert, "called someone over at TxDOT and got a verbal [authorization] because [they] were trying to get this going for that weekend, and [they] were going to wait for a verbal, or wait for the drawings." However, Honeycutt "d[id] not know who [Pierce] called."

In his deposition, Pierce stated that he did not have the authority to modify a traffic control plan nor give permission to do so—only an engineer for TxDOT could approve a modification to a traffic control plan through a signed and sealed modification. When asked about giving verbal approval to modify the traffic control plan, Pierce stated, "[t]hat's not true." After further questioning, Pierce clarified that he did not recall a conversation wherein he obtained verbal approval to deviate from the traffic control plan so he could not say whether it did or did not happen but that he would not have had the authority to obtain such verbal approval. Pierce said any verbal authorization would have gone

---

4 The parties have also referred to the yellow line as "stripes and dots."

through TxDOT's inspector, Juan Embil. Embil similarly testified that he did not recall whether verbal authorization had been given to deviate from the traffic control plan, but he would not have been able to give it. Embil agreed that such modification would need to be approved in writing by a TxDOT engineer. Despite not receiving a signed and sealed approval to modify the traffic control plan, Williams Brothers proceeded to lay the stripes and dots on the roadway to divide the conflicting traffic lanes. Although both appellees and TxDOT argue that TxDOT gave verbal approval, none of the witnesses from TxDOT acknowledged giving any verbal authorization to alter the traffic control plan.

Edwin Ho was the TxDOT engineer who designed the traffic control plan that was in effect at the time of the accident. Ho did not recall seeing the proposed amendments to the traffic control plan from Williams Brothers and did not approve them, either verbally or in writing. Ho believed that the specific change requested by Williams Brothers should have been made in writing, rather than by verbal approval.

Melody Galland, TxDOT's southeast Harris County area engineer, was also deposed. Galland was the engineer overseeing the project at the time of accident. Galland testified that, along with relying on manuals and standards, an engineer exercises discretion in developing a traffic control plan. When asked if Galland believed the curve near the accident needed a warning sign, she answered "No." Galland also stated that the low-profile concrete barrier would not have fit between the west bound and east bound lanes, nor would construction barrels. Galland believed the stripes and dots were appropriate given the circumstances.

The trial court denied TxDOT's plea to the jurisdiction and motion for summary

5

judgment by submission. TxDOT appeals the trial court's denial of its plea to the jurisdiction and no evidence motion for summary judgment. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(8).

## II. SOVEREIGN IMMUNITY

### A. Standard of Review

Sovereign immunity protects the State of Texas and its political subdivisions from liability for negligence. *Univ. of Tex. Med. Branch at Galveston v. York*, 871 S.W.2d 175, 177 (Tex. 1994). However, immunity may be waived by constitutional or statutory provisions. *Id.* If a political subdivision of the State enjoys sovereign immunity, the trial court does not have subject matter jurisdiction. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 225–26 (Tex. 2004). Whether a court has subject matter jurisdiction is a question of law, which we review de novo. *Id.* at 226. "When a plea to the jurisdiction challenges the pleadings, we determine if the pleader has alleged facts that affirmatively demonstrate the court's jurisdiction to hear the cause." *Id.* We will liberally construe the pleadings and look to the pleader's intent. *Id.* "However, if a plea to the jurisdiction challenges the existence of jurisdictional facts, we consider relevant evidence submitted by the parties when necessary to resolve the jurisdictional issues raised, as the trial court is required to do." *Id.* at 227.

If the evidence creates a fact question, the plea to the jurisdiction should not be granted, and the fact issue should be resolved by the trier of fact. *Id.* at 228. If, on the other hand, the relevant evidence is undisputed or fails to raise a fact question on the jurisdictional issue, the trial court should rule on the plea to the jurisdiction as a matter of

6

law. *Id.* This standard generally mirrors that of summary judgment. *Id.*; *see generally* TEX. R. CIV. P. 166a(c). Accordingly, the governmental unit carries the initial burden. *Miranda*, 133 S.W.3d at 228. "[A]fter the state asserts and supports with evidence that the trial court lacks subject matter jurisdiction, we simply require the plaintiffs, when the facts underlying the merits and subject matter jurisdiction are intertwined, to show that there is a disputed material fact regarding the jurisdictional issue." *Id.* "When reviewing a plea to the jurisdiction in which the pleading requirement has been met and evidence has been submitted to support the plea that implicates the merits of the case, we take as true all evidence favorable to the nonmovant." *Id.* "We indulge every reasonable inference and resolve any doubts in the nonmovant's favor." *Id.*

## B.    Texas Tort Claims Act

TxDOT argues that the trial court erred by denying its plea to the jurisdiction because TxDOT retains sovereign immunity for discretionary acts, which include design decisions. *See* TEX. CIV. PRAC. & REM. CODE ANN § 101.056(2). As a sub-issue, TxDOT asserts that immunity was not waived under § 101.060(c) because the condition did not constitute a special defect for which TxDOT would have the duty to warn. *Id.* §§ 101.022(b), 101.060(c). Accordingly, our review of the applicable law will focus on TxDOT's arguments and appellees' responses thereto.

The Texas Tort Claims Act (TTCA) creates limited waivers of sovereign immunity. TEX. CIV. PRAC. & REM. CODE ANN. §§ 101.001–.109; *Miranda*, 133 S.W.3d at 224. Section 101.021(2) provides that "[a] governmental unit in the state is liable for . . . personal injury and death so caused by a condition or use of tangible personal or real property if the

7

governmental unit would, were it a private person, be liable to the claimant according to Texas law." TEX. CIV. PRAC. & REM. CODE ANN. § 101.021(2).

Immunity is also waived in certain situations involving a premise defect. *Id.* § 101.022. In a premise defect claim, "the governmental unit owes to the claimant only the duty that a private person owes to a licensee on a private property, unless the claimant pays for the use of the premises." *Id.* § 101.022(a). "The limitation of duty in [§ 101.022(a)] does not apply to the duty to warn of special defects such as excavations or obstructions on highways, roads, or streets or to the duty to warn of the absence, condition, or malfunction of traffic signs, signals, or warning devices as is required by [§] 101.060." *Id.* § 101.022(b). Under § 101.060, except where a special defect exists, the waiver of immunity does not apply to a claim arising from:

> (1) the failure of a governmental unit initially to place a traffic or road sign, signal, or warning device if the failure is a result of discretionary action of the governmental unit; (2) the absence, condition, or malfunction of a traffic or road sign, signal, or warning device unless the absence, condition, or malfunction is not corrected by the responsible governmental unit within a reasonable time after notice; or (3) the removal or destruction of a traffic or road sign, signal, or warning device by a third person unless the governmental unit fails to correct the removal or destruction within a reasonable time after actual notice.

*Id.* § 101.060. Where a special defect exists, the governmental unit must provide a warning. *Id.* § 101.060(c).

Governmental units are also protected from liability for claims based on discretionary acts or failure to perform an act not required by law. *Id.* § 101.056. This provision generally preserves immunity not only for the State's public policy decisions, but also for the State's failure to act when no particular action is required by law. *Stephen*

*F. Austin State Univ. v. Flynn*, 228 S.W.3d 653, 657 (Tex. 2007). The Texas Supreme Court has created a distinction between "negligent formulation of policy, for which sovereign immunity is preserved, and the negligent implementation of policy, for which immunity is waived." *Id.* Whether an act is a matter of formation or implementation is a question of law. *Id.* "Decisions about highway design and about what type of safety features to install are discretionary policy decisions." *State v. Miguel*, 2 S.W.3d 249, 251 (Tex. 1999) (per curiam); *Tex. Dep't of Transp. v. Ramirez*, 74 S.W.3d 864, 867 (Tex. 2002) (per curiam) (holding that TxDOT's decision to not place a median barrier was a discretionary decision for which it retains immunity); *see Brazoria County v. Van Gelder*, 304 S.W.3d 447, 454 (Tex. App.—Houston [14th Dist.] 2009, pet. denied). Likewise, TxDOT retains immunity for its discretion on setting speed limits. *Van Gelder*, 304 S.W.3d at 453–54. Compliance with the Texas Manual on Uniform Traffic Control Devices (TMUTCD), which sets out safety standards for the design and implementation for traffic control devices, is not mandatory. *Id.* at 454 (citing *State Dep't of Highways & Pub. Transp. v. King*, 808 S.W.2d 465, 466 (Tex. 1991) (per curiam)).

## C.    Premise Defect

In a premises defect claim, the government only owes the claimant a duty equal to that of a licensee. TEX. CIV. PRAC. & REM. CODE ANN. § 101.022(a). The Supreme Court of Texas held that:

> The duty owed to a licensee on private property requires that "a landowner not injure a licensee by willful, wanton or grossly negligent conduct, and that the owner use ordinary care either to warn a licensee of, or to make reasonably safe, a dangerous condition of which the owner is aware and the licensee is not."

9

*Sampson*, 500 S.W.3d at 385 (quoting *State Dep't of Highways & Pub. Transp. v. Payne*, 838 S.W.2d 235, 237 (Tex. 1992)). Section 101.022(a) requires that the governmental unit have actual knowledge of the dangerous condition, not merely the possibility that a dangerous condition could develop. *City of Dallas v. Thompson*, 210 S.W.3d 601, 602–03 (Tex. 2006) (per curiam); TEX. CIV. PRAC. & REM. CODE ANN. § 101.022(a). If, however, the premise has a special defect on roadways, such as an excavation or obstruction, the limitation on the State's duty does not apply. TEX. CIV. PRAC. & REM. CODE ANN. § 101.022(b). If a special defect does exist, the governmental unit owes the person the duty of care owed to an invitee. *The Univ. of Tex. at Austin v. Hayes*, 327 S.W.3d 113, 116 (Tex. 2010) (per curiam).

A condition constitutes a special defect "only if [it] pose[s] a threat to the ordinary users of a particular roadway." *Denton County v. Beynon*, 283 S.W.3d 329, 331 (Tex. 2009). "Whether a condition is a special defect is a question of law." *Hayes*, 327 S.W.3d at 116. The Supreme Court of Texas has promulgated some characteristics to consider when determining whether a condition is a special defect:

> (1) the size of the condition; (2) whether the condition unexpectedly and physically impairs a vehicle's ability to travel on the road, (3) whether the condition presents some unusual quality apart from the ordinary course of events, and (4) whether the condition presents an unexpected and unusual danger to the ordinary users of the roadway.

*Id.* The special defect "jurisprudence turns on the objective expectations of an 'ordinary user' who follows 'the normal course of travel.'" *Id.* (quoting *Beynon*, 327 S.W.3d at 332). In the absence of a special defect, the claimant must show that the governmental unit "failed to either (1) use ordinary care to warn a licensee of a condition that presented an

10

unreasonable risk of harm of which the landowner is actually aware, and the licensee is not, or (2) make the condition reasonably safe." *Id.* at 117.

### III. ANALYSIS

TxDOT argues that the trial court erred by denying its plea to the jurisdiction because TxDOT retains sovereign immunity for discretionary acts, which include design decisions. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 101.056(2). As a sub-issue, TxDOT asserts that immunity was not waived under § 101.060(c) because the condition did not constitute a special defect for which TxDOT would have the duty to warn. *Id.* §§ 101.022(b), 101.060(c).

In their third amended petition, appellees alleged TxDOT was negligent by: (1) failing to create and implement a traffic control plan that was safe for the driving public; (2) failing to warn the public of a deep left turn; (3) failing to reduce the speed of the area to a safer speed; and (4) allowing the roadway to open up before it was safe to do so. Appellees point to TxDOT's original plan to include the low-profile concrete barriers—as opposed to stripes and dots—as evidence that TxDOT negligently created and implemented its amended traffic control plan. TxDOT does not argue that appellees' pleadings failed to establish a waiver of sovereign immunity but instead that the jurisdictional facts do not support a waiver of immunity. *See Miranda*, 133 S.W.3d at 225–26.

### A. Special Defect

Before we can analyze whether TxDOT maintains protection for discretionary acts, we must first determine whether a special defect exists. *See* TEX. CIV. PRAC. & REM. CODE

11

ANN. §§ 101.022(b), 101.060(c). If a special defect does exist, then TxDOT owed a duty to warn drivers of the special defect. *See id.* §§ 101.022(b), 101.060(c); *Hayes*, 327 S.W.3d at 116; *see also City of Houston v. Cogburn*, No. 01-11-00318-CV, 2013 WL 1136553, at *8 (Tex. App.—Houston [1st Dist.] Mar. 19, 2013, no pet.) (mem. op.) ("The existence of a special defect, however, is an exception to the rule that a governmental entity does not waive immunity for a discretionary act.").

In order to constitute a special defect, the condition complained of must pose a threat to the ordinary users of a particular roadway. *See Beynon*, 283 S.W.3d at 331–32. The condition for which appellees complain is the use of stripes and dots as opposed to concrete barriers. In applying the characteristics outlined in *Hayes*, we note that (1) the witnesses all agree that the roadway did not have enough space to use the concrete barrier; (2) the stripes and dots do not physically impair a vehicle's ability to travel on the roadway; (3) the construction zone did present, to some degree, an unusual quality from the normal course of events; and (4) a version of stripes and dots to delineate lanes is normally and routinely used on roadways, including lanes between oncoming traffic. *See Hayes*, 327 S.W.3d at 116. As the stripes and dots used less space than concrete barriers would have, the size of the condition weighs against a finding of a special defect. *See id.* Conversely, the unusual nature of the construction zone weighs in favor of a finding of a special defect. *See id.* However, because the application of stripes and dots would not interfere with the normal course of travel for an ordinary user, the use of stripes and dots as opposed to concrete barriers does not constitute a special defect. *See id.* Therefore, a special defect does not exist, and TxDOT's failure to initially place a road sign, signal,

or warning device does not waive sovereign immunity. *See* Tᴇx. Cɪᴠ. Pʀᴀᴄ. & Rᴇᴍ. Cᴏᴅᴇ Aɴɴ. § 101.060(a), (c).

## B.     Discretionary Function

TxDOT argues that § 101.056 protects it from liability because the design and implementation of traffic control measures is a discretionary function. *See* Tᴇx. Cɪᴠ. Pʀᴀᴄ. & Rᴇᴍ. Cᴏᴅᴇ Aɴɴ. § 101.056; *Miguel*, 2 S.W.3d at 251. As such, TxDOT maintains that it retains immunity even for an ordinary, as opposed to special, premises defect.

The Texas Supreme Court has held that § 101.056 protects TxDOT's discretion to decide which particular safety devices to implement and courts should not second-guess those discretionary decisions. *Miguel*, 2 S.W.3d at 251. In response, appellees contend that TxDOT does not have the "discretion to violate the law[5] or ignore its own contract.[6]" However, appellees have provided no authority that holds TxDOT does not have the discretion to verbally modify a traffic control plan in such a way that would waive immunity. Further, whether TxDOT approved the modified traffic control plan through a signed and sealed document or verbally does not change the nature of the condition made the basis of appellees' complaint. In other words, if TxDOT had approved the modification through a signed and sealed document, the condition would still have existed. Appellees have

---

[5] Appellees' brief does not indicate which law it alleges TxDOT violated. Although appellees cited to 22 Tᴇx. Aᴅᴍɪɴ. Cᴏᴅᴇ Aɴɴ. § 137.33(a) at the trial level, their brief is devoid of any such citation. Section 137.33(a) states that "[t]he purpose of the engineer's seal is to assure the user of the engineering product that the work has been performed or directly supervised by the professional engineer named and to delineate the scope of the engineer's work." 22 Tᴇx. Aᴅᴍɪɴ. Cᴏᴅᴇ Aɴɴ. § 137.33(a)

[6] Parties are generally free to voluntarily engage in a course of conduct that is inconsistent with the expressed terms of a contract. *See, e.g.*, Tᴇx. Bᴜs. & Cᴏᴍᴍ. Cᴏᴅᴇ Aɴɴ. § 1.303(a) (defining "course of performance"); *id.* § 1.303(f) ("[A] course of performance is relevant to show a waiver or modification of any term inconsistent with the course of performance.").

also failed to demonstrate how TxDOT has violated the law, other than making the broad assertion that they have done so. *See* TEX. R. APP. P. 38.2(a)(1) (requiring appellee's brief to comply with the requirements of appellant's brief in rule 38.1); *id.* R. 38.1(i) (requiring briefs to "contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record").

If TxDOT has the discretion to design a safety control plan, it must also have the discretion to modify said plan. *See Miguel*, 2 S.W.3d at 251. In *Miguel*, TxDOT used barrels to warn drivers of a section of missing railing on an exit ramp from a freeway. *Id.* at 250. The court held that even though an engineer had not directed the maintenance crew which warning device to use, TxDOT maintained immunity because it complied with its policy found in the TMUTCD. *Id.* at 251. However, the Fourteenth Court of Appeals has held that compliance with the TMUTCD is not mandatory and failure to do so does not necessarily result in a waiver of immunity. *Van Gelder*, 304 S.W.3d at 455.

In the present case, the uncontroverted evidence shows that the traffic control plan called for a low-profile concrete barrier between conflicted lanes of traffic. However, upon reaching that phase of construction, Williams Brothers discovered that the roadway did not have enough space for the low-profile concrete barriers. After sending a redlined plan to TxDOT and other contractors, Williams Brothers received verbal confirmation to proceed with the modified plan through Pierce.[7] Although the deposition testimony indicates that Williams Brothers did not abide by the contract when modifying the traffic

---

[7] Although Pierce did not recall giving permission, both TxDOT and appellees contend such fact is true.

14

control plan, appellees have presented no evidence that TxDOT's implemented traffic control plan—the use of stripes and dots—violated its own policies, whether through the TMUTCD or otherwise.[8] *See Miguel*, 2 S.W.3d at 251; *Flynn*, 228 S.W.3d 657 (holding negligent implementation of policy is not protected by sovereign immunity). We conclude that TxDOT's discretion to design a traffic control plan includes its discretion to modify a plan. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 101.056(2); *Miguel*, 2 S.W.3d at 251; *Ramirez*, 74 S.W.3d at 867. Likewise, TxDOT retains immunity for its discretion on setting the speed limit. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 101.056(2); *Van Gelder*, 304 S.W.3d at 453–54. Accordingly, TxDOT's sole issue is sustained.

## IV. CONCLUSION

We reverse and render a judgment of dismissal for want of jurisdiction.

CLARISSA SILVA
Justice

Delivered and filed on the
27th day of May, 2021.

---

[8] Appellees did not plead and do not argue that TxDOT negligently implemented its policies; rather, Appellees argue that TxDOT did not have the discretion to act in the manner that they did. *See Stephen F. Austin State Univ. v. Flynn*, 228 S.W.3d 653, 657 (Tex. 2007) (distinguishing between negligent policy and negligent policy implementation); *see also Tex. Dep't of Transp. v. Hathorn*, 03-11-00011-CV, 2012 WL 2989235, at *6 (Tex. App.—Austin July 19, 2012, no pet.). Because the pleadings and evidence affirmatively show that appellees' factual complaints concern discretionary decisions for which TxDOT retains immunity, it is not possible for appellees to invoke jurisdiction. *See Tex. Dep't of Transp. v. Ramirez*, 74 S.W.3d 864, 867–68 (Tex. 2002) (per curiam).