

# NUMBER 13-22-00358-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

SAVERGV, SIERRA CLUB,
AND CARRIZO/COMECRUDO
NATION OF TEXAS, INC.,                                    Appellants,

v.

TEXAS GENERAL LAND OFFICE
AND DAWN BUCKINHAM, M.D., IN
HER OFFICIAL CAPACITY AS THE
TEXAS LAND COMMISSIONER,                          Appellees.

On appeal from the 445th District Court
of Cameron County, Texas.



## NUMBER 13-22-00359-CV

## COURT OF APPEALS

## THIRTEENTH DISTRICT OF TEXAS

## CORPUS CHRISTI – EDINBURG

SAVERGV, SIERRA CLUB,
AND CARRIZO/COMECRUDO
NATION OF TEXAS, INC.,                                            Appellants,

v.

CAMERON COUNTY,                                                  Appellee.

On appeal from the 445th District Court
of Cameron County, Texas.



# NUMBER 13-22-00360-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

SAVERGV, SIERRA CLUB,
AND CARRIZO/COMECRUDO
NATION OF TEXAS, INC.,                                    Appellants,

v.

TEXAS ATTORNEY GENERAL,                                    Appellee.

On appeal from the 445th District Court
of Cameron County, Texas.

# MEMORANDUM OPINION

**Before Chief Justice Contreras and Justices Longoria and Silva**
**Memorandum Opinion by Justice Silva**

Appellants SaveRGV, Sierra Club, and Carrizo/Comecrudo Nation of Texas, Inc. (the Tribe), filed a suit seeking a declaratory judgment that Texas Natural Resources Code §§ 61.011(d)(11), and 61.132, which permit the closure of beaches for space flight activities, violates the Texas Constitution's Open Beaches Amendment. *See* TEX. CONST. art. I, § 33(c). Appellants also sought a declaratory judgment that § 15.32(d) of Title 31 of the Texas Administrative Code, which provides for the closure of the beach and associated access points for space flight activities, violates the Open Beaches Amendment. *See id.* Appellees Cameron County, the Texas General Land Office (GLO), Dawn Buckingham, M.D. in her official capacity as the Texas Land Commissioner (Commissioner),[1] and the Texas Attorney General each filed a plea to the jurisdiction, arguing, among other things, that appellants lacked standing. The trial court granted each appellee's plea to the jurisdiction, dismissing appellants' claims.

By three issues, which we reorder and construe as two, appellants argue that the trial court erred by granting the pleas to the jurisdiction because (1) appellants demonstrated that they had standing; and (2) governmental immunity is waived in cases challenging the constitutionality of a statute, such as here. We reverse and remand.

## I.   BACKGROUND

The Texas Constitution provides that "[t]he public, individually and collectively, has an unrestricted right to use and a right of ingress to and egress from a public beach. The right granted by this subsection is dedicated as a permanent easement in favor of the

---

[1] When this suit originated, George P. Bush was the Texas Land Commissioner. However, Dawn Buckingham, M.D., was elected as the Texas General Land Office Commissioner on November 8, 2022, and took office on January 10, 2023. *See* TEX. R. APP. P. 7.2(a) (automatically substituting public officers if the office holder changes before final disposition).

public." *Id.* art. I, § 33(b). This provision, commonly referred to as the Open Beaches Amendment, permits the legislature to "enact laws to protect the right of the public to access and use a public beach and to protect the public beach easement from interference and encroachments" but "does not create a private right of enforcement." *Id.* art. I, § 33(c), (d). In 2013, the legislature enacted Texas Natural Resources Code § 61.132, which permits the commissioners in a county bordering the Gulf of Mexico or its tidewater to temporarily close a beach in reasonable proximity to a space flight launch site or access points to the beach in the county on launch dates. TEX. NAT. RES. CODE ANN. § 61.132.

According to SaveRGV's first amended petition, following the passage of § 61.132, appellees have allowed the closure of Boca Chica Beach in Cameron County for up to 450 hours per year to allow Space Exploration Technologies Corporation (SpaceX) to conduct activities related to space flight launches. Such closures prompted SaveRGV to file a suit seeking declaratory judgment that § 61.132 violates the Open Beaches Amendment and is thus unconstitutional. Moreover, SaveRGV asserted that Texas Natural Resources Code § 61.011(d)(11), which allows the Commissioner to promulgate rules for the closure of beaches for space flight launches, violated the Open Beaches Amendment.[2] *See id.* § 61.011(d)(11). Consistent with its challenge to §§ 61.011(d)(11) and 61.132, SaveRGV also challenged § 15.32(d) of Title 31 of the Texas Administrative Code, which "provide[s] for the closure of a beach and associated access points during

---

[2] Appellants asserted facial and as-applied constitutional challenges to both statutes. *See Tenet Hosps. Ltd. v. Rivera*, 445 S.W.3d 698, 702 (Tex. 2014) (explaining the distinction between facial and as-applied challenges to the constitutionality of a statute).

5

space flight activities as consistent with state law." 31 TEX. ADMIN. CODE § 15.32(d) (2023) (Tex. Gen. Land Off., Certification Status of Cameron County Dune Protection and Beach Access Plan). Lastly, SaveRGV challenged the constitutionality of a memorandum of agreement between the GLO and Cameron County, as well as a Cameron County Commissioner's Court order permitting the closure of Boca Chica Beach and State Highway 4 for space flight launches.

SaveRGV describes itself as

> a Texas non-profit corporation that advocates for environmental justice and sustainability and the health and well-being of the Rio Grande Valley community. SaveRGV also promotes the conservation and protection of wildlife habitat and the natural areas of the Rio Grande Valley, including by defending the public's right to access Boca Chica Beach. . . . SaveRGV is not a membership organization, but it is led, guided, and funded by persons who recreate in, reside near, and otherwise regularly use the Boca Chica Beach; these individuals bear the indicia of membership.

SaveRGV alleged that its "members reside, recreate, use, and otherwise regularly access Boca Chica Beach" and they "have all been impacted by the frequent closure of the [b]each and of the [s]tate [h]ighway that provides the only access to the [b]each." SaveRGV described how the closures have impacted four specific members; it went on to allege that "[o]n several occasions, members of SaveRGV have attempted to visit the [b]each, only to be turned away by local law enforcement enforcing the County's closure of the [b]each or of State Highway 4."

Sierra Club and the Tribe filed a petition in intervention, joining SaveRGV's request for declaratory relief. Sierra Club alleged that its "members include residents of Cameron County who regularly recreate and otherwise rely on Boca Chica Beach for a variety of activities." The Tribe alleged that it is a Texas non-profit membership organization whose

purposes include serving "the cultural, social, educational, spiritual, linguistic, economic, health, and traditional needs of its members and descendants of the Carrizo/Comecrudo Nation of Texas and other indigenous or Native American groups."

According to Sierra Club,

> its corporate purposes are to explore, enjoy, and protect the wild places of the earth, to practice and promote the responsible use of the earth's ecosystems and resources, to educate and enlist humanity to protect and restore the quality of the natural and human environment, and to use all lawful means to carry out these objectives.

Sierra Club described how the beach closures have affected one member in particular who attempted to visit Boca Chica Beach on her birthday but was turned back due to beach closure.

Appellees each filed pleas to the jurisdiction, seeking to have appellees' suit dismissed. The Attorney General argued that (1) appellants lacked standing; (2) sovereign immunity forecloses appellees' facial constitutional challenge; and (3) appellants could not allege a viable constitutional challenge. Cameron County argued in its plea that (1) the Open Beaches Amendment does not create a private right of enforcement by its own terms, *see* TEX. CONST. art. I, § 33(d); and (2) appellants lacked standing. The GLO and Commissioner argued in their plea that (1) appellants lacked standing; (2) appellants could not demonstrate an injury-in-fact; (3) any alleged injury was not traceable to acts or omissions by the GLO or Commissioner; (4) the Open Beaches Amendment does not create a private right of enforcement by its own terms, *see id.*; (5) claims against the GLO and Commissioner were redundant and thus only the GLO should remain, if any; and (6) sovereign immunity protects the GLO and Commissioner from suits seeking declaratory relief.

7

The trial court granted each plea to the jurisdiction without explaining its basis for doing so. These appeals followed.

## II. STANDARD OF REVIEW

"A plea to the jurisdiction is a dilatory plea, the purpose of which is to defeat a cause of action without regard to whether the claims asserted have merit." *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000). The plea challenges the trial court's subject matter jurisdiction over a pleaded cause of action. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004). Subject matter jurisdiction is a question of law; therefore, when the determinative facts are undisputed, we review the trial court's ruling on a plea to the jurisdiction de novo. *Id.* A plaintiff has the burden to affirmatively demonstrate the trial court's jurisdiction. *Town of Shady Shores v. Swanson*, 590 S.W.3d 544, 550 (Tex. 2019).

## III. APPLICABLE LAW

### A. Standing

#### 1. Generally

Standing, as a component of subject matter jurisdiction, is never presumed and cannot be waived. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 443–44 (Tex. 1993). When determining whether a party has standing, we may look to analogous federal jurisprudence. *See Heckman v. Williamson County*, 369 S.W.3d 137, 151–52 (Tex. 2012). To have standing, (1) a plaintiff must have suffered an injury in fact, (2) the injury must be fairly traceable to the defendant, and (3) the injury must likely be redressable by a favorable decision from the court. *Id.* at 154–55 (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61, (1992)).

To constitute an injury in fact, there must be "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Id.* at 154 (cleaned up). The plaintiff themself must have personally suffered the injury rather than the public at large. *Id.* at 155. "Constitutional harms—whether actual or imminent—are sufficient." *Id.* Moreover, the plaintiff's injury must be fairly traceable to the challenged action of the defendants, not an "injury that results from the independent action of some third party not before the court." *Id.* Finally "[t]o satisfy redressability, the plaintiff need not prove to a mathematical certainty that the requested relief will remedy his injury—he must simply establish a 'substantial likelihood that the requested relief will remedy the alleged injury in fact.'"[3] *Id.* at 155–56 (quoting *Vt. Agency of Nat. Res. v. U.S. ex rel. Stevens*, 529 U.S. 765, 771 (2000)).

"To challenge a statute, a plaintiff must both suffer some actual or threatened restriction under the statute and contend that the statute unconstitutionally restricts the plaintiff's rights." *Patel v. Tex. Dep't of Lic. & Regul.*, 469 S.W.3d 69, 77 (Tex. 2015) (cleaned up). "Where there are multiple plaintiffs in a case, who seek injunctive or declaratory relief (or both), who sue individually, and who all seek the same relief, the court need not analyze the standing of more than one plaintiff—so long as that plaintiff has standing to pursue as much or more relief than any of the other plaintiffs." *Patel*, 469 S.W.3d at 77 (cleaned up).

### 2. Associational Standing

An association has standing to sue on behalf of its members when "'(a) its

_____

[3] Appellees did not challenge redressability as an element of standing.

members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.'" *Tex. Ass'n of Bus.*, 852 S.W.2d at 447 (quoting *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977)). However, an association does not need to have formal membership to have associational standing, so long as the individuals associated therewith bear "all the indicia of membership." *Friends of the Earth, Inc. v. Chevron Chem. Co.*, 129 F.3d 826, 828 (5th Cir. 1997) (citing *Hunt*, 432 U.S. at 344–45). "Under the indicia-of-membership test, we consider whether an organization's purported 'members' (1) elect the organization's leaders, (2) serve in the organization's leadership, (3) finance the organization's activities, (4) associate voluntarily with the organization, and (5) provide sworn testimony of membership." *Students for Fair Admissions, Inc. v. Univ. of Tex. at Austin*, 37 F.4th 1078, 1084 n.7 (5th Cir. 2022) (citing *Hunt*, 432 U.S. at 344–45).

## B.    Sovereign Immunity

Sovereign immunity protects the State of Texas and its political subdivisions from liability for negligence. *Univ. of Tex. Med. Branch at Galveston v. York*, 871 S.W.2d 175, 177 (Tex. 1994). However, immunity may be waived by constitutional or statutory provisions. *Id.* If a political subdivision of the State enjoys sovereign immunity, the trial court does not have subject matter jurisdiction. *Miranda*, 133 S.W.3d at 225–26. Whether a court has subject matter jurisdiction is a question of law, which we review de novo. *Id.* at 226. A waiver of immunity must be clear and unambiguous. *Oncor Elec. Delivery Co. LLC v. Dall. Area Rapid Transit*, 369 S.W.3d 845, 849 (Tex. 2012).

Under the UDJA, "[a] person . . . whose rights, status, or other legal relations are

affected by a statute . . . may have determined any question of construction or validity arising under the . . . statute . . . and obtain a declaration of rights, status, or other legal relations thereunder." TEX. CIV. PRAC. & REM. CODE ANN. § 37.004(a). If a statute, ordinance, or franchise is alleged to be unconstitutional, "the attorney general of the state must . . . be served with a copy of the proceeding and is entitled to be heard." *Id.* § 37.006(b). This provision of the UDJA waives sovereign immunity for suits challenging the constitutionality of a statute. *See City of El Paso v. Heinrich*, 284 S.W.3d 366, 373 n.6 (Tex. 2009) (first citing TEX. CIV. PRAC. & REM. CODE ANN. § 37.006(b); then citing *Wichita Falls State Hosp. v. Taylor*, 106 S.W.3d 692, 697–98 (Tex. 2003) ("[I]f the Legislature requires that the State be joined in a lawsuit for which immunity would otherwise attach, the Legislature has intentionally waived the State's sovereign immunity."); and then citing *Tex. Educ. Agency v. Leeper*, 893 S.W.2d 432, 446 (Tex. 1994)); *see also Swanson*, 590 S.W.3d at 552 (noting that the UDJA provides "a limited waiver [of immunity] for challenges to the validity of an ordinance or statute").

Under the APA, "[t]he validity or applicability of a rule . . . may be determined in an action for declaratory judgment if it is alleged that the rule or its threatened application interferes with or impairs, or threatens to interfere with or impair, a legal right or privilege of the plaintiff." TEX. GOV'T CODE ANN. § 2001.038(a). "The state agency must be made a party to the action." *Id.* § 2001.038(c).

### IV.   ANALYSIS

### A.   Standing

By their first issue, appellants argue that they possessed standing to pursue their claim. In contrast, appellees contend, through a multifaceted argument, that appellants

11

lack standing to bring their suit. Specifically, appellees argue that appellants lack standing because: (1) their members did not suffer an injury-in-fact;[4] (2) their challenge to Texas Natural Resource Code §§ 61.011(d)(11) and 61.132 and the Cameron County Commissioners' Court order fails because the alleged injury is not traceable to any action by the appellees; (3) Texas Constitution Article I, § 33 does not create a private right of enforcement; and (4) the UDJA does not provide a separate basis for standing.

## 1. Injury-in-Fact

Appellants argue that they did in fact suffer an injury-in-fact, not just the public at large. We agree. The Open Beaches Amendment provides the public, *individually and collectively*, with the unrestricted right to use and a right of ingress to and egress from a public beach in the form of a permanent easement. TEX. CONST., art. I, § 33(b) (emphasis added). Sierra Club and the Tribe's petition in intervention pleaded specific times their members attempted to use their permanent easement to access the public beaches but were denied due to closure for space flight launches. *See Severance v. Patterson*, 370 S.W.3d 705, 721 (Tex. 2012) ("Because the easement holder is the dominant estate owner and the land burdened by the easement is the servient estate, the property owner may not interfere with the easement holder's right to use the servient estate for the purposes of the easement."). Thus, although the beach closures affected the public at

---

[4] The Attorney General's plea to the jurisdiction also challenged SaveRGV's associational standing because it did not plead facts demonstrating that the individuals associated with the organization bore the indicia of membership. *See Friends of the Earth, Inc. v. Chevron Chem. Co.*, 129 F.3d 826, 828 (5th Cir. 1997) (citing *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 344–45 (1977) (holding that an association does not need to have formal membership to have associational standing, so long as the individuals associated therewith bear "all the indicia of membership")). Sierra Club, who does have a traditional membership structure, intervened in the suit. As discussed *infra*, because at least Sierra Club has standing, we do not review whether SaveRGV would have standing independently. *See Patel v. Tex. Dep't of Lic. & Regul.*, 469 S.W.3d 69, 77 (Tex. 2015).

large, the individual members pleaded an injury-in-fact specific to them, not just the public at large. *See Heckman*, 369 S.W.3d at 155.

## 2.     Traceability

Appellees next argued in their pleas that appellants' alleged injury cannot be traced to any acts or omissions of the GLO, the Commissioner, or Cameron County, but instead to the Texas Legislature and the Cameron County Commissioner's Court. Appellants in turn argue that their injuries are directly traceable to the unconstitutional statutes and actions taken thereunder. Again, we agree with appellants. Although the legislature passed the statute that permits the closure of beaches for space flight launches, it is Cameron County itself who has actually closed the beaches. The GLO and Commissioner permitted the beach closure through the adoption of § 15.32(d) of Title 31 of the Texas Administrative Code. *See* 31 TEX. ADMIN. CODE § 15.32(d). Appellees provide no authority for their contention that Cameron County Commissioners Court is the proper defendant as opposed to the County itself. *See* TEX. R. APP. P. 38.1(i); *see also Tex. A & M Univ. Sys. v. Koseoglu*, 233 S.W.3d 835, 844 (Tex. 2007) ("[A] suit against a state official is merely 'another way of pleading an action against the entity of which [the official] is an agent.'" (quoting *Kentucky v. Graham*, 473 U.S. 159, 165 (1985)); *see, e.g.*, *Flores v. Cameron County, Texas*, 92 F.3d 258, 261 (5th Cir. 1996) (dismissing claims against County Judge in his official capacity as redundant of claims against Cameron County). Accordingly, we conclude that appellants' alleged injury is fairly traceable to the conduct of Cameron County and the GLO. *See Heckman*, 369 S.W.3d at 155.

## 3.     Private Right of Enforcement

As noted, the Open Beaches Amendment states that it "does not create a private

right of enforcement." TEX. CONST. art. I, § 33(d). Appellees argued in their pleas that this provision necessarily prohibits appellants from challenging the constitutionality of the statutes and rules permitting the closure of beaches for space flight launches.[5] However, as appellants point out, they did not bring a private action to enforce their right to access the beach. Such an action would most likely take the form of an injunction against a private entity, such as SpaceX, to prohibit their space flight launches that lead to the closure of Boca Chica Beach. Instead, appellants challenge the constitutionality of the statutes, rule, memorandum of agreement, and order.

Appellees rely on *Texas Medicine Resources, LLP v. Molina Healthcare of Texas, Inc.*, which held that an insurance code provision regarding the payment for emergency care services performed by out-of-network physicians did not create a private cause of action. 659 S.W.3d 424, 435 (Tex. 2023). However, *Texas Medicine Resources* involved a group of physicians suing an insurance provider for payment under the insurance code provision being considered. *See id.* In other words, the plaintiffs brought suit against a private third-party rather than challenging the constitutionality of the statute. *See id.* at 428–30. *Texas Medicine Resources* is thus inapposite. Because appellants did not bring a private cause of action to enforce their right to access the beach, but instead brought a declaratory judgment action seeking to have the statutes and rule declared void, appellants' suit is not barred. *See* TEX. CONST. art. I, § 33(d); *see also id.* art. I, § 29 ("To guard against transgressions of the high powers herein delegated, we declare that every[]thing in this 'Bill of Rights' is excepted out of the general powers of government,

---

[5] Although the Attorney General abandoned this argument at oral argument, the GLO and Cameron County maintained it.

14

and shall forever remain inviolate, and all laws contrary thereto, or to the following provisions, shall be void.").

### 4. UDJA Standing

Lastly, appellees now argue on appeal that "the UDJA does not provide any separate basis for standing." Because we conclude that appellants satisfied injury-in-fact and traceability, they have standing, and we need not address appellees' argument that "the UDJA does not provide any separate basis for standing." Accordingly, we sustain appellants' first issue.

## B. The Commissioner

The GLO and the Commissioner next argued in their plea that the trial court properly dismissed appellants' suit against the Commissioner because claims against the Commissioner are redundant to those against the GLO. "Under Texas law, a suit against a government employee in his official capacity is a suit against his government employer with one exception: an action alleging that the employee acted *ultra vires*." *Franka v. Velasquez*, 332 S.W.3d 367, 382 (Tex. 2011) (internal citations omitted). Appellants' suit against the Commissioner is, in essence, an *ultra vires* suit: appellants allege that the Commissioner adopted the rule in question in contravention of the Texas Constitution and seek a declaration of such. *See Heinrich*, 284 S.W.3d at 372–73 ("[I]t is clear that suits to require state officials to comply with statutory or constitutional provisions are not prohibited by sovereign immunity . . . . To fall within this *ultra vires* exception, a suit must not complain of a government officer's exercise of discretion, but rather must allege, and ultimately prove, that the officer acted without legal authority or failed to perform a purely ministerial act."); *see also Hall v. McRaven*, 508 S.W.3d 232, 240 (Tex. 2017) ("[A]n ultra

15

vires suit must lie against the 'allegedly responsible government actor in his official capacity.'" (quoting *Patel*, 469 S.W.3d at 76)). Accordingly, appellants' suit against the Commissioner is not prohibited.

## C. Immunity

Appellants argue that the UDJA expressly waives sovereign immunity in suits challenging the constitutionality of a statute. *See Heinrich*, 284 S.W.3d at 373 n.6. We agree. Longstanding case law holds that the UDJA, which requires the inclusion of the relevant governmental unit as a party, waives immunity for suits seeking to have a statute declared unconstitutional. *See id.*

Appellees argue for the first time on appeal that "[s]ince [a]ppellants challenged the [a]ppellees' actions under the aforementioned provisions of the Texas Natural Resources Code, the UDJA does not waive sovereign immunity vis-à-vis [a]ppellants' claims against the [a]ppellees."[6] However, appellees misstate appellants' suit. Appellants are not challenging appellees' actions, but instead seek a declaratory judgment that the statutes and rule in question are invalid and violative of Texas Constitution, article I, § 33. In other words, appellants are challenging the validity of a statute, which is expressly permitted by the UDJA and under long-standing precedent. *See Heinrich*, 284 S.W.3d at 373 n.6; *see also Swanson*, 590 S.W.3d at 552 ("[T]he UDJA does not contain a general waiver of sovereign immunity, providing only a limited waiver for challenges to the validity of an ordinance or statute."); *Tex. Dep't of Transp. v. Sefzik*, 355 S.W.3d 618, 622 (Tex. 2011) (per curiam) ("[T]he state may be a proper party to a declaratory judgment action

---

[6] Appellees do not elaborate on how appellants' pleadings challenge their actions rather than the statutes.

that challenges the validity of a statute."). Moreover, the APA provides that a party may challenge the validity or applicability of a rule and that the state agency must be made a party to the action. *See* TEX. GOV'T CODE ANN. § 2001.038(a), (c). Accordingly, Cameron County and the GLO's immunity is waived. Appellants' second issue is sustained.

## D.    Merits Challenge

Appellees also argued in their pleas that appellants' suit fails on its face because the challenged statutes are "plainly rational" and "do[] not violate the right to public beach access." Appellants, in turn, contend that this argument goes to the merits of their case rather than to whether the trial court possessed jurisdiction. Appellees assert that the statutes and rule provide "for the protection of the public health, safety, and welfare on dates when an FAA-approved launch is to take place." Senate Comm. On Admin., Bill Analysis, Tex. H.B. 2623, 83 Leg., RS. at 1 (2013). During oral argument, the Attorney General cited *Klumb v. Houston Municipal Employees Pension System*, wherein the Texas Supreme Court held that the plaintiffs "failed to plead a viable equal-protection claim because the board's actions are rationally related to at least two legitimate government objectives which are promoted by the challenged classification." 458 S.W.3d 1, 13–14 (Tex. 2015). There, the Texas Supreme Court reviewed the trial court's order granting the Houston Municipal Employees Pension System's (HMEPS) plea to the jurisdiction as to the plaintiff's equal protection and due process claims. *See id.* at 3–4. Ultimately, the court upheld the dismissal because the plaintiffs failed to plead "viable" constitutional claims; specifically, the court concluded that HMEPS had a rational basis for treating employees and former employees of the City of Houston differently. *See id.* However, *Klumb* did not involve a challenge to the constitutionality of a statute, but rather

17

involved a challenge to HMEPS's actions (its classification of employees) under the Texas Constitution equal protection clause. *See id.* 3–4 (applying TEX. CONST. art. I, § 3). Thus, to the extent appellees argue that *Klumb* stands for the proposition that we must determine the merits of appellants' constitutional arguments at this stage of the proceeding, we are unpersuaded.[7] Accordingly, *Klumb* does not compel us to uphold the dismissal of appellants' suit.

## E.      Redundant Remedies

Lastly, appellees argue for this first time on appeal that appellants' UDJA claims are barred by the redundant remedies doctrine because they challenged the GLO's amended rule under the APA. *See* TEX. GOV'T CODE ANN. § 2001.038 (permitting a declaratory judgment regarding the validity or applicability of an administrative rule). "Under the redundant remedies doctrine, courts will not entertain an action brought under the UDJA when the same claim could be pursued through different channels." *Patel*, 469 S.W.3d 79. "When a plaintiff files a proceeding that only challenges the validity of an administrative rule, the parties are bound by the APA and may not seek relief under the UDJA because such relief would be redundant." *Id.* However, similar to *Patel*, the appellants here challenge more than just the validity of an administrative rule—they challenge the constitutionality of statutes and the commissioner's court order as well. *See*

---

[7] We recognize that statutes are not always reviewed for constitutionality under a means-end test, such as rational basis, intermediate scrutiny, or strict scrutiny. For example, the United States Supreme Court rejected the application of such tests to determine the constitutionality of statutes under the Second Amendment. *See N.Y. State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1, 19 (2022) ("[T]he government must affirmatively prove that its firearms regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms."). However, we do not decide today what test should be applied to determine the constitutionality of the challenged provisions.

*id.* at 80. Accordingly, the redundant remedies doctrine does not bar appellants' UDJA claims. *See id.* ("Here the Threaders challenge both rules as defined by the APA and statutes. Because the Threaders cannot attack the constitutionality of the statutes pursuant to [§] 2001.038 of the APA, their UDJA claims are not barred by the redundant remedies doctrine.").

## V.   CONCLUSION

Having concluded that the appellants possessed standing and that immunity was waived for each appellee, and having rejected the appellees' additional arguments supporting dismissal, we sustain appellants' sole issue. We reverse the trial court's judgment and remand this case to the trial court for further proceedings.


CLARISSA SILVA
Justice

Delivered and filed on the
1st day of February, 2024.

19